2:12-cr-20272-DPH-LJM Doc # 265 Filed 12/24/13 Pg 1 of 10 Pg ID 1330

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



FILED
DEC 24 2013
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

UNITED STATES OF AMERICA

Plaintiff,

v.

Case No. 12-CR-20272
Honorable Denise Page Hood

D-10 CAREY MARIE VIGOR,

Defendant.

_____/

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNTS 1, 9, 10, AND CRIMINAL FORFEITURE PURSUANT TO FRCP 12(B)(2) AND DEEMING DEFENDANT'S MOTION TO ALLOW TRAVEL MOOT

Before the Court is Defendant Carey Marie Vigor's Motion to Dismiss Counts 1, 9, 10, and Criminal Forfeiture Pursuant to Fed. R. Crim. P. 12(b)(2). **[Docket No. 223, filed November 1, 2013]** The Government filed a response to this motion on November 15, 2013. **[Docket No. 248]** Also before the Court is Defendant's Motion to Allow Travel to the State of California during Pendency of Case **[Docket No. 231, filed November 1, 2013]** to which the Government filed a response on November 15, 2013. **[Docket No. 249]** On December 5, 2013, the Court entered a Stipulated Order Allowing Defendant Carey Vigor to Travel to California. Based on this Order, the

Court deems Defendant's Motion to Allow Travel **GRANTED**. For the reasons discussed below, Defendant's Motion to Dismiss is **DENIED**.

## I. BACKGROUND

Defendant Carey Vigor was charged by Second Superseding Indictment with one count of Health Care Fraud Conspiracy in violation of 18 U.S.C. § 1349 (Count 1), and two counts of Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts 9 and 10), all in connection with her involvement in a large Medicare fraud scheme in which the Government estimates $29.1 million in losses. The indictment alleges that from or in around January 2007 to in or around April 2012, Defendant Vigor "did willfully and knowingly combine, conspire, confederate and agree with others, known and unknown . . . to violate [18 U.S.C. § 1347] . . . to execute a scheme and artifice to defraud a health care benefit program affecting commerce . . . ." Defendant Vigor is alleged to have used "materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services."

As to Count 1 specifically, Defendant Vigor is alleged to have submitted or caused someone else to submit "Medicare enrollment applications and obtain Medicare provider numbers for Reliance, First Choice, Associates, ABC, Swift, and

Haven and other home health care, psychotherapy and medical service companies, so as to allow these companies to bill Medicare" for services that were either not provided or not medically necessary. Defendant Vigor is also alleged to have helped to operate and control these medical service companies. The indictment charges Defendant Vigor with fabricating and altering patient files to give the false impression that medical services were medically necessary or provided, billing for these services, and aiding in submitting approximately $29.1 million in claims to Medicare for the cost of these services. As to Counts 9 and 10, Defendant Vigor is charged "in connection with the delivery of and payment for health care benefits, items, and services . . . [involved in] a scheme or artifice to defraud a health care benefit program . . . ." According to the indictment, Defendant Vigor submitted two claims for $40.00 on June 16, 2010 for Group Psychotherapy. Pursuant to 18 U.S.C. § 982-Criminal Forfeiture, Defendant Vigor was forced to "forfeit to the United States any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly . . ." from her involvement in the alleged crimes.

## II.   ANALYSIS

Defendant Vigor brings this Motion to Dismiss Counts 1, 9, 10, and Criminal Forfeiture Pursuant to Fed. R. Crim. P. 12(b)(2) based on Defendant's allegation that the indictment "fail[s] to allege and/or provide any specific instances of criminal

3

activity on the part of [Defendant] Vigor." An indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To be sufficient, an indictment generally must "fully, directly, and expressly . . . set[ ] forth all the elements necessary to constitute the offense intended to be punished." *United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir. 2009) (quoting *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005)). "In particular, the indictment must: (1) 'set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces,' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.'" *Id.*

Motions to dismiss in a criminal action are governed by Rule 12 of the Federal Rules of Criminal Procedure. Rule 12 provides that a defendant may bring a motion challenging "a defect in the indictment or information," including "a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). "An indictment as drafted is presumed sufficient if it tracks statutory language, cites the elements of the crimes charged, and provides approximate dates and times." *United States v. Chichy*, 1 F.3d 1501, 1504 n.3 (6th Cir. 1993). A motion to dismiss is limited to the four corners of the indictment and the allegations in the indictment are assumed to be true and viewed

4

in the light most favorable to the Government. *United States v. Keller*, 2009 WL 2475454, at *4 (E.D. Mich. Aug. 11, 2009) (unpublished); *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (noting that a trial court does not evaluate the evidence upon which the indictment is based in ruling on a motion to dismiss).

In her motion, Defendant Vigor argues that this Court should dismiss Count 1 and Counts 9 and 10 as well as the requirement for criminal forfeiture because the Government fails to allege "specific instances of criminal activity." As to Count 1, Health Care Fraud Conspiracy in violation of 18 U.S.C. § 1349, Defendant argues that: the only named Defendants that Vigor interacted with are Defendant Felicar Williams and Defendant Mohammed Sadiq; the government has no evidence of an agreement on Vigor's part to defraud Medicare; the government has no evidence that Vigor received any of the alleged $29 million that was fraudulently billed; the government has no evidence that Vigor received any direct payment from Medicare for services that she provided to Haven Adult Care Center, LLC; Vigor only received payment for services that she provided to Haven patients at the agreed upon compensation rate of $150 per hour; Haven has separate and distinct patient treatment and billing departments; Vigor was not involved with billing; Vigor had no ownership interest and did not operate or control any of the named medical service companies; the government has no evidence that Vigor falsified documents; and,

5

lastly, Vigor was an independent contractor who was not involved with the day-to-day operations of Haven. Defendant Vigor claims that the Government has "revealed no evidence that [she] received any of the alleged $29M fraudulently billed to Medicaid," and the Government has "produced no evidence nor . . . specif[ied] any evidentiary support for the allegation that . . . Vigor had anything whatsoever to do with the billing by Haven or any of the other entities identified . . . ." For these reasons, Defendant Vigor contends Count 1 should be dismissed.

As to Counts 9 and 10, Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 2, Defendant notes that it appears that she is charged with "defrauding Medicare of $80 out of the $29.1 M supposedly received by the various medical services entities via fraud." Again, Defendant Vigor argues that the Government has "no evidence" that she has an ownership interest or exercised any control over operations at Haven or any of the other named health centers and, further, that she did not prepare or help to prepare any billing to Medicare for psychiatric services provided at Haven, including those alleged in the indictment for D.B. and R.B. Defendant Vigor states that though she did perform psychiatric services for Haven patients in June 2010, she billed Haven for those services at the $150 per hour rate that was agreed upon for payment. For these reasons, Defendant Vigor asserts Counts 9 and 10 should be dismissed.

6

As to Criminal Forfeiture, Defendant Vigor contends that this count should be dismissed because there "is no evidence that she defrauded Medicare by fraudulently billing Medicare to the tune of $29.1M." Defendant Vigor argues that there is no evidence that she had any part in the billing process and that the Government has failed to demonstrate otherwise. As to the time sheets that Vigor submitted, Defendant Vigor asserts that they listed her rate as $150 per hour for the psychiatric services that she performed for Haven patients between April 2010 and February 2012, which amounted to a total of approximately $30,000.00. Defendant argues that because there is "absolutely no evidence of nor . . . any specific allegations of conversations, meetings, discussions, or actions between [Defendant] Vigor and third parties establishing a conspiracy to defraud Medicare[,]" there is "no basis for imposing a criminal forfeiture on any of [Defendant] Vigor's property."

In response to these claims, the Government argues that Defendant Vigor's invocation of Rule 12(b) as a means for relief is improper. Specifically, the Government contends that Defendant Vigor requests that this Court "decide issues such as (1) her involvement in Haven's day-to-day-activities; (2) her role in Haven's billing process; (3) whether she falsified documents; and (4) whether monies paid to her gave her ample incentive to support Haven't fraud scheme." The Government states that "[d]istrict courts may ordinarily make preliminary findings of fact

7

necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). Defendant Vigor's motion, the Government argues, "requires the court to find facts that make up the elements of the case, a determination which would normally be reserved to the jury at trial[.]" *United States v. Jones*, 1:05-CR-132, 2006 WL 399234, at *1 (E.D. Tenn. Feb. 16, 2006) *aff'd*, 253 F. App'x 550 (6th Cir. 2007) (citing *United States v. Knox*, 396 U.S. 77, 83 n.7 (1969) (stating that "the trial judge . . . may consider on a motion to dismiss the indictment only those objections that are 'capable of determination without the trial of the general issue,' . . . [and] evidentiary questions . . . should not be determined on such a motion.")). For these reasons, the Government argues Defendant's motion to dismiss should be denied.

Additionally, the Government argues that Defendant Vigor's motion misstates the facts and that a finding of the facts should be left up to the jury. The Government contends that the evidence at trial will demonstrate that Defendant Vigor "was a knowing and willing participant in the fraud scheme" and that she: "(1) established a Medicare provider number ("PIN") at Haven; (2) was aware that her PIN was being used at Haven to defraud Medicare; (3) actively directed billing at Haven; and (4) was aware that Haven was billing for services that were not being provided." The

Government also claims that co-Defendant Sharma will testify to email exchanges between him and Defendant Vigor that show that Vigor was "actively engaged in monitoring and directing Haven's daily operations." The Government asserts that the determination of these facts, much like those previously stated, must be left to the jury. The Court is satisfied that these types of findings must be made by the fact-finder as they do not "involve[] questions of law" but, instead, "questions of fact on the merits of criminal liability." *United States v. Blaney*, 11-20606, 2012 WL 553558, at *3 (E.D. Mich. Feb. 21, 2012).

The Government further argues that even if the statements made in Defendant's motion were true, Defendant Vigor need not have been in a controlling position to be found liable for the charged offenses. The Government contends that Defendant Vigor's motion should be denied because the indictment and discovery in this case have provided Defendant Vigor with "ample notice of the charges" against her. The Court is satisfied that the Second Superseding Indictment clearly alleges that Vigor claimed services that were not provided in the manner that Medicare required, or, more specifically, that Defendant Vigor claimed payment for psychiatric therapy services that were either never provided or were medically unnecessary. Because the Court is satisfied that the indictment contains the elements of the offense charged, fairly informs Defendant Vigor of the charges against which she must defend, and

enables her to plead "an acquittal or conviction in bar of future prosecutions for the same offense," *see Hamling v. United States*, 418 U.S. 87, 117 (1974), Defendant's Motion to Dismiss Counts 1, 9, 10, and Criminal Forfeiture Pursuant to FRCP 12(B)(2) is **DENIED**.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Carey Vigor's Motion to Dismiss Counts 1, 9, 10, and Criminal Forfeiture Pursuant to FRCP 12(B)(6) **[Docket No. 223, filed November 1, 2013]** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Allow Travel to the State of California during Pendency of Case **[Docket No. 231, filed November 1, 2013]** to which the Court entered a Stipulated Order Allowing Defendant Carey Vigor to Travel to California is deemed **GRANTED** as set forth in the parties' stipulation.

**IT IS SO ORDERED.**

DATED: DEC 2 4 2013

Denise Page Hood
United States District Judge